WILLIAM STERRICKER *et al.*

*v.*

HENRY McBRIDE *et al.*

*Filed at Ottawa April 1, 1895—Rehearing denied October 15, 1895.*

1. CONTRACTS—*option to purchase additional lands upon condition.* The non-existence of a seam in a stone quarry on premises purchased is a condition of the right to claim an option to purchase additional land, which is given to the purchasers by the same contract "in case they are unable to find a seam in the quarry" on the premises first bought.

2. SAME—*when option to purchase additional land requires payment for land in street.* An option to purchase additional land at the same price per square rod as was paid on the first purchase, requires a portion for which a quit-claim deed, only, was to be given, and which was within a so-called street, to be included in the land to be paid for, where, under the first purchase, a part of the same strip was quit-claimed and paid for at the same rate as the other land.

3. EASEMENT—*when must be expressly reserved.* No right to use a strip of land for the purpose of ·passing or repassing to and from adjoining lands is retained by a grantor of such strip who makes no reservation of an easement, although the strip has been known as a street, and so marked on a plat which does not constitute a dedication.

4. EVIDENCE—*recitals in deed as to consideration open to proof.* Recitals in a deed in regard to the consideration may be inquired into in any way, provided it is not sought to impair the effect of the deed as a conveyance.

APPEAL from the Circuit Court of Kane county; the Hon. CHARLES KELLUM, Judge, presiding.

The bill of complaint herein was exhibited in the Kane circuit court by Henry McBride and Herbert A. Gage, appellees, against the South Elgin Stone Company, William Grote, and William Sterricker, A. C. Joslyn and J. W. Fletcher, the three latter being the commissioners of highways of Elgin township. The bill charges, in substance, that appellees have been, for some years, engaged in the business of selling and furnishing

masons' supplies and building stone to contractors and others at Elgin, and that the South Elgin Stone Company, of which William Grote is president, is in competition with them in such business, at that place; that on April 28, 1888, appellees purchased from one Joseph Tefft a strip of land at Clintonville, about two miles south of Elgin, that contained deposits of building stone, for the purpose of opening a stone quarry thereon, and at the same time secured from him and his wife an optional contract to purchase the land in controversy on or before the 28th day of January, 1889, at the same price as they paid for the land then deeded to them; that this option was secured so that in case it should become necessary, in opening the quarry, to secure a seam at the south of it to successfully work it, they could have a deed of the land in question; that immediately after purchasing the land the complainants went into possession and commenced to develop the stone quarry, and soon discovered that there was no seam in the quarry at the south end of said block, and that the quarry could not be successfully worked without securing one; that there are indications of such seam within the boundary of the lands mentioned in the contract, and thereupon complainants decided to take advantage of the provisions of the contract and obtain a conveyance of the north half of the north half of block 15 and a quit-claim deed of the space marked as Kane street; that Joseph Tefft died August 26, 1888, and partition of his lands was had among his heirs, and the property mentioned in the contract was sold under decree in partition, subject to the rights of the complainants under their contract, and that at such sale William Grote purchased block 15, for and on behalf of the South Elgin Stone Company; that before the death of Joseph Tefft complainants informed him of their desire to take under the contract, and, with his consent, went into possession of the lands mentioned in the contract, fenced the same along the highway, and erected a work

and tool house on the strip between blocks 15 and 16; that said officers and agents of said stone company purchased at said sale the said block 15 for the purpose of oppressing and annoying complainants, and to prevent competition with their trade; that in May, 1889, complainants applied to said Grote, who then represented his interests and those of the company, for a conveyance of the north half of the north half of block 15, and the strip of land lying north and east thereof, and tendered therefor $241, being the full purchase price provided for in the contract, and demanded a deed for the same, which was refused; that a plat of the lands in question was made by the owners of the same in 1847, and called Tefft & Raymond's plat of West Clinton, afterwards called Clintonville, and now South Elgin, but the village has never been incorporated under any law of this State; that North and Kane streets have never been used, recognized or traveled as highways; that the lands are low, wet and swampy; that access to them from LaFox street, which is the principal street on which they join, is practically impossible, made so by a deep gully, which forms part of an abandoned stone quarry, and that such pretended streets were never accepted, worked or recognized by the public authorities, but by said authorities were expressly excluded from the highways of said township; that the agents of said stone company, to annoy and harass complainants, pretended that North and Kane are public streets, and should be opened, and have prevailed on the highway commissioners to enter upon and attempt to improve the same, and that said commissioners, by force, have torn down the fence enclosing said premises, and are proceeding to fill up said gully, and threaten to demolish or remove the complainants' building out of said pretended streets. The bill states that the complainants are able, willing and ready to perform said contract and bring into court the money so tendered in payment for a conveyance. The said highway commissioners, William

Grote and said Elgin Stone Company are made parties defendant. The bill prays for an injunction to prevent said threatened injury, and prays for a decree requiring said South Elgin Stone Company, or William Grote, whichever of them shall hold a fee simple title to the premises mentioned in the contract, to convey the same according to the terms of the said contract.

William Grote and the South Elgin Stone Company jointly answer the bill, and deny that they have attempted to interfere or are interfering with complainants' business; admit large deposits of stone at Clintonville, but deny that they have a monopoly of the stone trade; admit the possession by complainants of land upon which they are opening a stone quarry, and admit the prevalence of seams in said quarry, but deny that said seams are necessary for the successful working of a quarry at the present day; admit the purchase of block 16 by complainants, which abuts upon the streets as shown on Tefft & Raymond's plat, which is a statutory plat, duly recorded; admit complainants had some contract with Joseph Tefft about a seam, and to convey to them a part of block 15 and the land lying between blocks 15 and 16, known as Kane street, but that such contract is not binding on the defendants; that said Tefft had no right to convey any interest in said Kane street; that complainants did find a seam on said premises, and therefore have no right to a conveyance of the premises mentioned in the contract; admit a partition sale of the premises, and the purchase of block 15 by Grote for the South Elgin Stone Company; claim that complainants had no right to fence in the strip of land between blocks 15 and 16, but admit that complainants erected a tool house thereon, but claim that they are trespassers against the rights of the public; deny that they purchased the block for the purpose of annoying complainants, but made the purchase for a legitimate purpose of their own; admit the demand for a conveyance of said premises, but deny a tender of $241;

admit the refusal to make any conveyance of said premises, because complainants were not entitled to receive one under said contract, because a seam had been found on their quarry on block 16; admit the making of the plat as charged in the bill of complaint, and admit that South Elgin, or Clintonville, has never been incorporated, and that the said plat forms no part of any incorporated city or town; deny that said Kane street is no part of the public highways of the township, but has been used and traveled as such, and when complainants invaded it it was being improved for street purposes; claim that by their purchase of block 15 they secured a vested interest in said street, and that it could not be legally closed against them nor complainants acquire any rights or interest in it.

The answer of the highway commissioners denies that they interfered with complainants' possession on behalf of the South Elgin Stone Company; deny that the complainants are entitled to have the option to purchase performed under said contract, and deny that the streets in question have ever been vacated, but expect to prove, when required so to do, that such streets are public highways; deny that there is no seam in the quarry as opened, and deny that it is necessary to have a seam for the purposes of conducting a quarry.

The circuit court, by its decree, found the facts substantially as set up in the bill, and granted a perpetual injunction against the highway commissioners from interfering with the possession of the complainants, and decreed conveyances to the complainants by the South Elgin Stone Company, upon payment to it of the sum of $241, by good and sufficient deeds, of the lands described in the bill, in manner and form as prescribed in the contract.

The contract involved in the suit, omitting the attesting clause and the signatures and seals of the parties thereto, is as follows:

"Memorandum of an agreement between Joseph Tefft and Lavina Tefft, his wife, of the city of Elgin, Kane county, Illinois, parties of the first part, and Henry McBride and Herbert A. Gage, of the same place, parties of the second part, made this 28th day of April, 1888:

"Whereas, said parties of the first part have this day sold and conveyed to said parties of the second part, by warranty deed, block sixteen (16) of Tefft & Raymond's plat of West Clintonville, Kane county, Illinois, and by quit-claim deed a strip of land two rods wide originally platted for a street and lying immediately north of said block sixteen (16), and all that piece of land lying between said block and Fox river, for the sum of twelve hundred dollars ($1200); and whereas, said parties of the second part intend to open a stone quarry in said premises so conveyed to them, and in case they are unable to find a seam in the quarry on said premises they want to secure enough of the land lying immediately south of said block, owned by said Joseph Tefft, to get such a seam so they can work such quarry:

"Now, therefore, this indenture witnesseth, that if the said second party does not find such a seam on the land so conveyed to them, then, in consideration of the premises and the sum of one dollar to them in hand paid by the said second party, the parties of the first part hereby agree to give the parties of the second part, their heirs and assigns, the privilege of purchasing, on or before the 28th day of July, A. D. 1889, the following described real estate in the county of Kane and State of Illinois, to-wit: So much of the north one-half ($\frac{1}{2}$) of block fifteen (15) of said plat as they may desire to purchase, provided as follows: That the south boundary of the land so purchased shall extend across said block and be parallel with the north line thereof; and provided further, that if the second party desire to purchase more than the north one-half ($\frac{1}{2}$) of the north one-half ($\frac{1}{2}$) of said block, they shall take the entire north half thereof. The first

parties also agree to convey, by quit-claim deed, with the above, land between blocks sixteen (16) and fifteen (15), known as Kane street, and all that land between Kane street and that part of block fifteen (15) so purchased, on the one side, and Fox river on the other, at the same price per square rod as has been paid for the said land this day conveyed to said parties, to be paid as follows: cash in hand when possession is taken,—the said north half of said block fifteen (15), or any part thereof, as the case may be, to be conveyed by warranty deed and the other premises by quit-claim deed.

"This instrument shall not be recorded, but is deposited, by mutual agreement, with J. W. Ranstead; and in case the privilege of purchase hereby given is not exercised and the conditions thereof fully performed by said parties of the second part, their heirs or assigns, on or before the 28th day of July, 1889, said privilege shall thereupon wholly cease, and the said J. W. Ranstead shall at once surrender this instrument to said parties of the first part for cancellation. During the existence of this said privilege of purchase this instrument shall be binding upon the heirs, executors and administrators and assigns of both parties."

D. B. SHERWOOD, and OSCAR JONES, for the South Elgin Stone Company:

Appellees having contracted with Tefft to purchase from him the land known as "Kane street" and to pay for it a certain price, are estopped from now claiming that they took title to the center of that street by virtue of their deed for block 16, which abutted thereon. *Byrne* v. *Morehouse,* 22 Ill. 603; *Arnott* v. *Friel,* 50 id. 174; *Pinckard* v. *Milmine,* 76 id. 453.

Appellees are estopped by their contract with Tefft from denying that the strip of land between blocks 15 and 16 is a street. *George* v. *Bischoff,* 68 Ill. 237; *Herrick* v. *Swartwout,* 72 id. 341; *Lucas* v. *Beebe,* 88 id. 427; *Blackburn* v. *Bell,* 91 id. 434.

The title to Kane street being in Tefft, at least so far as appellees are concerned, his heirs-at-law, he being dead, were necessary parties to this suit.  *Duncan* v. *Wickliffe,* 4 Scam. 452;  *Hoare* v. *Harris,* 11 Ill. 24;  *Whitney* v. *Mayo,* 15 id. 251;  *Prentice* v. *Kimball,* 19 id. 320;  *Moore* v. *Munn,* 69 id. 591;  *Hopkins* v. *Land Co.* 72 id. 373.

The contract must be enforced, if enforced at all, as the parties made it.  *Stone* v. *Pratt,* 25 Ill. 25;  *Lombard* v. *Chicago Sinai Congregation,* 75 id. 271;  *Hetfield* v. *Willey,* 105 id. 286.

Tefft & Raymond's plat was executed, acknowledged and recorded in accordance with the statute, and the fee simple title to the streets vested in the town for the use and benefit of the public.  Rev. Stat. sec. 3, chap. 109;  *Zinc Co.* v. *City of LaSalle,* 117 Ill. 411, and cases cited.

Where statutory dedication has been made, the former owner, or those claiming under him, has no power to withdraw dedication or tender of dedication except by the statutory mode, as prescribed in section 6, chapter 109, of the Revised Statutes.  *Waugh* v. *Leach,* 28 Ill. 492;  *Lake View* v. *Le Bahn,* 120 id. 92, and cases cited.

The public may use its discretion when to accept a dedication or improve its streets.  *Waugh* v. *Leach,* 28 Ill. 492;  *Lee* v. *Mound Station,* 118 id. 304.

A court of equity will not decree specific performance of a contract that would be vain or useless.  *Werden* v. *Graham,* 107 Ill. 169.

If the South Elgin Stone Company is under obligation to make good Tefft's agreement to convey the streets, it follows that appellees must tender payment according to the terms of the contract.  *Allison* v. *Clark,* Breese, 348;  *Doyle* v. *Teas,* 4 Scam. 202;  *Ishmael* v. *Parker,* 13 Ill. 324;  *Murphy* v. *Lockwood,* 21 id. 611.

IRWIN & EGAN, for appellants William Sterricker *et al.,* Commissioners of Highways.

BOTSFORD & WAYNE, for appellees:

Construction of the contract, as shown by the acts of the parties in relation to it, will be considered. *Vermont Street Church* v. *Brose,* 104 Ill. 206; *Hall* v. *Bank,* 133 id. 234.

A court of equity is not so hampered by an iron rule of construction in relation to contracts as to defeat the intention of the parties to a contract, and to destroy the obvious purpose for which it was executed. *Tracy* v. *Chicago,* 24 Ill. 500; *Robinson* v. *Stow,* 39 id. 568; *Thomas* v. *Wiggers,* 41 id. 470; *Walker* v. *Douglas,* 70 id. 445; *Field* v. *Leiter,* 118 id. 17; *Wilson* v. *Roots,* 119 id. 379; *Wood* v. *Clark,* 121 id. 359; 2 Parsons on Contracts, 691; *Colton* v. *Field,* 131 Ill. 398; *Grimley* v. *Davidson,* 133 id. 116; *Hall* v. *Bank,* 133 id. 241.

When a plat is made of lands not embraced within a municipal corporation, the fee of the soil is in abeyance, —not extinguished in the plat owner,—and the making of the plat, even if in strict conformity to the statute, is only an offer to dedicate. If not accepted by the public the owner may recall the dedication. *Chicago* v. *Drexel,* 141 Ill. 89; *Hamilton* v. *Railroad Co.* 124 id. 235; *Railroad Co.* v. *Joliet,* 79 id. 25; *Auburn* v. *Goodwin,* 128 id. 57; *Peoria* v. *Johnston,* 56 id. 45.

Non-acceptance of a platted street, or an abandonment by the public, works a revocation of the easement. *Auburn* v. *Goodwin,* 128 Ill. 57; *Winnetka* v. *Prouty,* 107 id. 218; *Peoria* v. *Johnston,* 56 id. 51; *Littler* v. *City of Lincoln,* 106 id. 353; *Hamilton* v. *Railroad Co.* 124 id. 235.

Mr. JUSTICE BAKER delivered the opinion of the court:

We will assume (but for the purposes of this appeal only) that the intent and scope of the executory contract of April 28, 1888, were that the "seam" mentioned in and contemplated by said contract was a "seam" located in the south part of the premises that day sold and conveyed to appellees. What premises were so sold and conveyed? The preamble to the contract says that they

were block 16 and a strip of land two rods wide origin-
ally platted for a street and lying immediately north of
said block 16, and all that piece of land lying between
said block and Fox river. The desire of appellees, as
stated in the preamble, was simply to secure additional
land to the south in the event they were "unable to find
a seam in the quarry on said premises,"—*i. e.*, on the
lands then conveyed; and the option given by the con-
tract, of making an additional purchase, was one that
could be availed of only "if the said second party does
not find such a seam on the land so conveyed to them."

The strip of ground sixty-six feet wide lying south of
block 16 and north of block 15 was platted and desig-
nated as Kane street. The provision in the contract for
the future and contingent conveyance to appellees of
this land between said blocks, "known as Kane street,"
seems to indicate, quite clearly, that it was not the under-
standing of the parties that Tefft, by the deed which he
made to appellees for block 16, conveyed or transferred
to them any part of said strip, and other language in the
contract points in the same direction. But it is claimed
by appellees that the lands platted by Tefft & Raymond
were never embraced within any municipal corporation;
that the making of the plat was only an offer to dedicate,
which was never accepted by the public authorities, and
that the so-called North street and Kane street were
never used or traveled as streets or highways by the
public, and that the conveyance to them (appellees) of
block 16, which was abutting property, transferred to
them the title, by operation of law, to the center line of
each of these once platted streets. The contention is,
that the warranty deed of April 28, 1888, for block 16,
conveyed to them the north half of the land designated
as Kane street, and the subsequent deed, after the death
of Tefft, to the South Elgin Stone Company of lot 15, had
the effect of conveying the south half of said strip to that
company. Of course, if the one deed had the effect of

working such conveyance to the one party, the other deed had the effect of working a like conveyance to the other party.

The case of appellees is in a dilemma. If the fee simple title to the north thirty-three feet of Kane street passed to appellees by reason of their deed from Tefft, then, under the option contract of April 28, 1888, they are not entitled to the right and privilege of purchasing all or any part of the north half of block 15 and of exacting a quit-claim deed that covers the south half of the land between blocks 15 and 16 that is known as Kane street, because, by the terms of the contract, such right and privilege are only conditional, and are expressly limited thereby to accrue to them only in the event they are unable to find a seam in the quarry on the land and premises conveyed to them by the deeds of April 28, 1888, and the evidence is clear and conclusive that they have never removed the soil from the north half of the land designated as Kane street and to the center line of said land, and demonstrated that no seam would or could be found on said north half. In fact, the evidence shows that the indications are that there is a seam either on said north half or immediately south of it; and if there is a seam on said north thirty-three feet, then it is perfectly manifest that they have no legal or equitable right to maintain a bill for specific performance, or to the decree awarding them conveyances for the north half of the north half of block 15 and the south half of Kane street.

We are unable to appreciate the force of the argument of appellees that they are the owners in fee of the north half of this strip of land, but subject to the easement of the owner of the adjoining land in block 15; that while there is no public highway or right of passage that the public can assert to the strip of land called Kane street, yet so long as Tefft or any third party held any part of the land in block 15 bordering on the line of the strip, he

or such third party had the right to have the strip, for its entire width, kept open for access to that portion of the block, and that until appellees had decided to purchase the land mentioned in the contract, and had received, or had become entitled to receive, a conveyance therefor, they could not legally enter upon or appropriate the north half of this strip to themselves. This argument proceeds upon the assumption that there is no street there. If there is a street, then not only Tefft and those holding block 15 under or through him, but the public, had and have a right to insist it should be kept open, and a right to use it at will in passing and repassing. If it was and is a public street, then it was and is a public street for all legitimate purposes of such a street. If it is not a public street, then when Tefft executed and delivered a deed which conveyed the north half of it to appellees, and made no reservation of an easement therein to himself, or for the benefit of his property in block 15, there was no easement, or right to use it for the purpose of passing and repassing to and from block 15.

Tefft was the owner of the whole of block 15, as an entirety, and the South Elgin Stone Company, through him, is the owner of the whole of said block as an entirety. There was and is free access to the block by way of LaFox street on the west and Stone street on the south, both of which are admittedly open and public highways, and by way of what is designated as Water street on the east. On the other hand, there is practically no access to the block by means of Kane street, because said street is low, wet and swampy, and is impassable on account of a deep gully, which forms part of an abandoned stone quarry. But even if said street were or could be made otherwise, yet ample means are afforded of reaching the block on the north by way of the south half of the strip, said south half being two rods wide. This thirty-three feet of ground being be-

tween block 15 and the land and premises that, according to the claim of appellees, were conveyed to them by the deeds from Tefft, it necessarily follows that the strip of ground that forms the north half of Kane street not only does not adjoin block 15, but is so located that there would and could be no occasion for passing over it in order to get to and from said block on its north side.

The theory of appellees on this branch of the case seems to be, that block 15 was and is the dominant, and the strip designated as Kane street the servient, estate, and that the latter was and is burdened with an easement for the benefit of the former. And it is also a part of their same theory that Joseph Tefft, at and before the time of the sales to and contract with them, the appellees, was owner and in possession of blocks 15 and 16, and the land four rods wide that lies between them. If so, the rule that when the dominant and servient estates are united in the same person the easement is extinguished, is applicable to the case, and it is not deducible from the language used in the warranty deed for block 16 that it was the intention of Tefft to create a right, in the nature of a servitude or easement, in any of the property conveyed for the benefit of block 15.

The other horn of the dilemma is equally fatal to the validity of the decree. If the titles to the north half and to the south half of the land designated as Kane street did not vest in appellees and the South Elgin Stone Company, respectively, by virtue of the deed to the former for block 16 and the deed to the latter for block 15, then it must either be that Tefft & Raymond, by their plat of Clintonville, dedicated the strip of land in question to the public for street purposes, and such dedication remained in abeyance, and operated as a continuous offer to so dedicate, until the township authorities accepted the dedication and the commissioners of highways commenced to improve the street, or that the title to the strip is vested in the heirs of Joseph Tefft. If Kane

street is a public street and highway, then, of course, appellees cannot have a specific performance of the contract of Tefft for the conveyance of said street to them, or a perpetual injunction enjoining the commissioners of highways from entering upon and improving such street. And on the other hand, if the title to the land known as Kane street is in the heirs of Joseph Tefft, deceased, then such heirs are necessary parties to the suit, in order to give the court jurisdiction to adjudicate the matters in controversy.

There is another ground upon which the decree is clearly erroneous. Appellees tendered to the South Elgin Stone Company only the sum of $241, and the court found that to be a sufficient tender, and decreed the execution of deeds to appellees upon the payment of said sum of $241. As we understand the contract and the record, the tender made and the sum required to be paid are wholly insufficient in amount. The contract gives to appellees the privilege of purchasing "so much of the north one-half ($\frac{1}{2}$) of block fifteen (15) * * * as they may desire to purchase." It also contains this further provision: "The first parties also agree to convey, by quit-claim deed, with the above, land between blocks sixteen (16) and fifteen (15), known as Kane street, and all that land between Kane street and that part of block fifteen (15) so purchased, on the one side, and Fox river on the other, at the same price per square rod as has been paid for the said land this day conveyed to said parties, to be paid as follows: cash in hand when possession is taken,—the said north half of said block fifteen (15), or any part thereof, as the case may be, to be conveyed by warranty deed and the other premises by quit-claim deed."

As has been hereinbefore seen, "the said land this day conveyed" is stated in the preamble of the contract to be not only block 16, but also the land immediately north thereof, two rods wide, originally platted for a street,

and the land between said block and Fox river. It is conceded that the "price per square rod" paid for the land first bought was $5, and the tender that was made by appellees to the stone company was $5 per square rod for the number of square rods contained in the north half of the north half of block 15. It is also an admitted fact that $1200 was the price paid by appellees to Tefft for the land bought and conveyed on April 28, 1888. The plat in evidence shows that block 16 is 330 feet from east to west by 167 feet from north to south, and that North street is two rods wide and is 330 feet in length, from LaFox street to the east end of block 16. We find nothing in the record to indicate the width of the land lying between said block and Fox river, but, judging from the plat, it was probably regarded as insignificant, and not taken into the account. North street contains forty square rods of land, and that street and block 16, taken together, contain but a few feet more than 240 rods of land, and 240 square rods of land, at $5 per square rod, amounts to $1200,—the exact price that was paid for the land deeded to appellees at the time of the first purchase. As the quit-claimed land contained in North street was taken into account in computing the purchase money then paid, and as by the executory contract appellees were to pay for the land on which the option was given the same price per square rod as was paid for the land then conveyed to them, it necessarily follows that the price of the square rods of land located in Kane street, at $5 a square rod, was also to be included in the purchase money to be paid in the event appellees desired to avail of the privilege of buying contained in said contract. It is true that $1200 was inserted in the warranty deed for block 16 as the consideration money, and also that the nominal consideration of one dollar was stated in the quit-claim deed. But the rule is, that the recitals in a deed in regard to the consideration may be inquired into in any way, provided it is not sought to impair the

effect of the deed as a conveyance. (*Illinois Central Ins. Co.* v. *Wolf*, 37 Ill. 354; *Morris* v. *Tillson*, 81 id. 607.) It is also true that one of the appellees, in his testimony, after first testifying that the consideration for the two conveyances of April 28, 1888, was $1200, says, in answer to a question asked by his counsel : "One thousand two hundred dollars was the price of the block; then he gave me a quit-claim deed of a piece of land on the north side of the block and on the east of it; $1200 was the consideration for the land described." But we regard this ambiguous and unsatisfactory testimony as of little weight as against the evidence afforded by the contract itself, and the plat of the land, and the deeds.

There are other questions of interest that arise upon the record, but a consideration of them is not necessary for the purposes of this appeal. And as it appears that other persons, who are not parties to this suit, are interested in the subject matter at issue and involved in said questions, we refrain from any decision upon them.

For the errors indicated herein, the decree is reversed and the cause is remanded.

*Reversed and remanded.*